## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| **BRIAN WILLIAMS,** | |
| **Plaintiff,** | **No. 16 C 3807** |
| **v.** | |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]** | **Magistrate Judge Mary M. Rowland** |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Williams filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

2d 973, 977 (N.D. Ill. 2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

On August 10, 2010, Administrative Law Judge (ALJ) John Kraybill granted Plaintiff's request for DIB benefits for a closed period beginning on June 13, 2004, and ending on November 12, 2009. (R. at 187–94). The ALJ determined that Plaintiff was under a disability due to degenerative disc disease, status post fusion, obesity, and sleep apnea during this closed period. (*Id.* at 190–92). However, the ALJ found that medical improvement occurred, and that, beginning on November 12, 2009, Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined by 20 C.F.R. § 404.15676(a) and his disability ended. (*Id.* at 192–94). Plaintiff did not appeal the August 2010 decision.

Plaintiff again applied for DIB benefits on May 9, 2011, alleging that he became disabled on February 1, 2010, because of degenerative disc disease, mild stenosis, sleep apnea, allergies, and obesity. (R. at 195–95, 221, 228). The application was denied initially on August 1, 2011, and upon reconsideration on October 4, 2011, after which Plaintiff filed a timely request for a hearing. (*Id.*). On November 15, 2012, Plaintiff, represented by counsel, testified at a hearing before ALJ Rebecca LaRiccia, who denied Plaintiff's request for benefits. (*Id.* at 120–52, 200–08). Plaintiff's request for review by the Appeals Council was granted, and, on March 5, 2014, the Appeals Council remanded Plaintiff's application back to the ALJ. (*Id.* at 214-15).

A second hearing was held before ALJ Rebecca LaRiccia on November 3, 2014. (R. at 153–82). Plaintiff, represented by counsel, and vocational expert (VE) James

Breen testified at the hearing. (*Id.*). The ALJ issued a new written decision on December 1, 2014, again denying Plaintiff's request for benefits. (*Id.* at 101–18). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity from his alleged onset date of February 1, 2010, through his date last insured of December 31, 2012. (*Id.* at 103). At step two, the ALJ found that Plaintiff's cervicalgia, degenerative disc disease of the lumbar spine status post lumbar fusion, sleep apnea, and obesity were severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 105).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff could perform sedentary work except:

> he could lift/carry, push and/or pull up to 9 pounds maximum, sit for 6 hours out of an 8-hour workday and stand/walk 6 hours out of an 8-hour workday with the ability to change positions every 30 minutes for a brief 1–2 minute period before returning to the original position but can remain at the work station. The claimant cannot perform repetitive twisting or bending but could occasionally climb, stoop, kneel, crouch, twist, and crawl and could bilaterally handle and finger on a frequent basis.

(R. at 106). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff was unable to perform any past relevant work. (*Id.* at 110). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimo-

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

ny, the ALJ found that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including order clerk, charge account clerk, and information clerk. (*Id.* at 111). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability, as defined by the Act. (*Id.* at 112).

The Appeals Council denied Plaintiff's request for review on February 5, 2016. (R. at 1–4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might ac-

cept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## V. RELEVANT MEDICAL EVIDENCE

On September 4, 2009, Dean Karahalios, M.D., performed an elective L4-S1 anterior lumbar interbody fusion on Plaintiff due to persistent back pain. (R. at 567–69). Upon discharge, Plaintiff was diagnosed with L4-5 and L5-S1 degenerative disc disease with mechanical back pain and intermittent radiculopathy status post L4-5 and L5-S1 anterior lumbar interbody fusion with instrumentation. (*Id.* at 567). Dr.

Karahalios had four follow-up evaluations with Plaintiff from October 25, 2010, to August 7, 2013. (*Id.* at 770, 771, 799, 818). At each of these evaluations, Dr. Karahalios opined that Plaintiff is at "maximal medical improvement," and that Plaintiff has the following limitations: "no lifting anything equal to or greater than [ten pounds], no excessive "twisting and bending at the waist," and no "prolonged sitting, standing, or walking." (*Id.*). In May 2013, Dr. Karahalios ordered MRIs which revealed disc protrusion, stenosis with nerve encroachment and radiculopathy. (*Id.* at 800, 802). In August 2013, Dr. Karahalios discussed surgical options with Plaintiff but indicated that there are "no guarantees" on the outcome. (*Id.* at 817).

State agency consultant Bharati Jhavari, M.D., performed a Physical RFC Assessment based on her review of Plaintiff's medical records on July 28, 2011. (R. at 624–31). She diagnosed degenerative disc disease, status post L4-S1 lumbar fusion, radiculopathy, sleep apnea and obesity. (*Id.* at 624). Dr. Jhavari opined that Plaintiff could perform work at a light exertional level, limited to occasionally lift twenty pounds; frequently lifting ten pounds; standing, walking, and sitting about six hours in an eight-hour workday, and occasionally stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, and scaffolds. (*Id.* at 625–26). Dr. Jhavari indicated that "[Plaintiff's] statements are considered fully credible and have been factored into this statement." (*Id.*). On August 1, 2011, DDS consultant Vidya Madala, M.D., affirmed Dr. Jhavari's assessment. (*Id.* at 704–06).

On July 31, 2011, Pranjal Shah, M.D., examined Plaintiff at the request of the DDS. (R. at 617–23). Dr. Shah's examination indicated that Plaintiff's motor

strength was 5/5, sensation was intact by light touch, and deep tendon reflexes were 2+ in all four extremities. (*Id*. at 619). Plaintiff displayed no muscle atrophy, normal grip strength, and was able to walk 50 feet with a normal gait without a cane. (*Id*.). The doctor found a reduced range of motion of the lumbar spine with positive straight leg raising test at eighty degrees as well as tenderness over the lumbar spine and bilateral sacroiliac joints. (*Id*.). The doctor diagnosed lumbar radiculopathy, cervical radiculopathy, sleep apnea and obesity. (*Id*.).

Christine Villoch, M.D., began treating Plaintiff for continued back pain with epidural steroid injections on September 1, 2011. (R. at 721–22). Plaintiff had six follow up evaluations with Dr. Villoch from April 27, 2011, through January 16, 2013. (*Id*. at 728, 733, 742, 758, 772, 789). At each of these appointments, Dr. Villoch opined that Plaintiff was restricted to "no lifting of anything equal to or greater than [ten pounds]," no excessive "twisting and bending at the waist," and no "prolonged sitting, standing, or walking." (*Id*.) Plaintiff continued to receive epidural steroid injections in January, May, October, November and December of 2013. (*Id*. at 790, 805, 833, 837, 841).

In an adult function report dated September 14, 2011, Plaintiff reported that his ailments affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instruction and get along with others. (R. at 436). He indicated that his "legs go numb" after sitting for 10–20 minutes and that he takes three to four naps a day for one to two hours at a time. (*Id*. at 441).

8

At the November 2, 2014 hearing, Plaintiff testified that he last worked as a route salesman for Pepsi, where he lifted items between 25–60 pounds. (R. at 159). He indicated that he was terminated after being involved in an accident on the job. (*Id.* at 160).[4] Plaintiff alleged that he has frequent numbness in his hands and legs and that pain interferes with his attention. (*Id.* at 160–61). He claimed to have problems with his hip and knee, including burning and throbbing pain. (*Id.* at 161). He testified that if he does 15 minutes of an activity, then he has to rest for 20–30 minutes or sleep for an hour to an hour and a half. (*Id.* at 161, 166–67). Plaintiff indicated that he takes Cymbalta, Nortirptyline, and Flexeril, which cause him to feel drowsy. (*Id.* at 163–64). He further noted that he receives epidural steroid injections, but that these provide pain relief for only seven to ten days. (*Id.* at 172). He stated that he occasionally uses ice or a cane when he gets sharp pains. (*Id.* at 165). Plaintiff testified that he is unable to help with most household chores, but that he can do a small amount of cooking, laundry, and shopping on occasion. (*Id.* at 168). He indicated that he occasionally goes fishing and flies out to South Caroline or drives to Missouri to visit his children at college. (*Id.* at 168–70). When asked how long he can drive before he needs to take a break, Plaintiff testified that after 15–20 minutes, he experiences pain from sitting. (*Id.* at 170).

---

[4] On January 28, 2003, Plaintiff was in an accident at work while delivering products on a dolly, affecting his lower back. (R. at 54). In March 2004, Plaintiff stopped working due to a back injury. (*Id.* at 54, 125).

## V. DISCUSSION

In support for his request for reversal, Plaintiff argues that the ALJ (1) failed to properly assess Plaintiff's RFC; and (2) improperly evaluated Plaintiff's subjective symptom statements. (Dkt. 13 at 6–20).

### A. The ALJ's Evaluation of Plaintiff's Subjective Symptoms

Because an RFC assessment frequently "depend[s] heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court begins with Plaintiff's argument that the ALJ improperly assessed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." Social Security Ruling (SSR) 16-3p, at *2.[5] "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administering." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's subjective statements. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former SSR 96-7p, re-

quires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

As an initial matter, Plaintiff argues that the ALJ used "boilerplate" language as an explanation for his subjective symptom evaluation. (Dkt. 13 at 13). In her decision, the ALJ stated in part:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. at 107). This is the same language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony." *Bjornson,* 671 F.3d at 645. "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or dis-

credit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination." *Pepper v. Colvin,* 712 F.3d 351, 367–68 (7th Cir. 2013). While the Court is not persuaded that the ALJ's use of this boiler-plate language alone is grounds for reversal in this case; the Court finds that at least some of the reasons provided by the ALJ for rejecting Plaintiff's symptom statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

### 1. *Daily activities*

First, the ALJ failed to explain how Plaintiff's ability to complete limited daily activities undermines his allegations of pain or equates to an ability to perform full-time work. While it is permissible for an ALJ to consider a claimant's daily activities when assessing a Plaintiff's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs are not to place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy*, 705 F.3d at 639.

13

Here, the ALJ's analysis of Plaintiff's daily activities consisted of the following:

> [Plaintiff's] allegations regarding the severity of his pain and the degree of rest and reclining periods he requires due to pain are not supported by the record. . . . While [Plaintiff] initially averred that he could not do any activities of daily living, he later modified this to limited activities of daily living. According to information in the record, [Plaintiff] previously reported that he is able to complete activities of daily living, such as caring for his personal hygiene needs and getting up from a bed or a chair independently.

(R. 109). The ALJ did not adequately explain how Plaintiff's ability to "care for his personal hygiene and [get] up from a bed or chair independently" contradicts his allegations of pain. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at 778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"). Likewise, these limited activities do not demonstrate that Plaintiff can perform full-time work. *See Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week).

14

### 2. *Looking for work in the past*

The ALJ's explanation that Plaintiff "also acknowledges that he has looked for other work in the past" (R. at 110) is similarly flawed. The Seventh Circuit has found "no inherent inconsistency in being both employed and disabled," much less in simply looking for work. *Ghiselli*, 837 F.3d at 778 (*citing Wilder v. Chater*, 64 F.3d 335, 337–38 (7th Cir. 1995)). Here, the ALJ offered "no support for [her] conclusion that looking for a new job was inconsistent with [Plaintiff's] disability claim." *Ghiselli*, 837 F.3d at 778 ("Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.). Without any explanation of how Plaintiff's looking for past work undercuts his symptom statements, the Court cannot credit this rationale.

### 3. *Allegations of pain*

Next, Plaintiff argues that the ALJ improperly analyzed his allegations of pain by failing "to determine if the medical evidence alone could have produced the pain and symptoms that [Plaintiff] alleged and if the objective medical evidence alone substantiated the intensity, persistence, and limiting effects of the pain and symptoms that [Plaintiff] described." (Dkt. 13 at 15). The Seventh Circuit instructs that "where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations." *Zurawski v. Halter*, 245 F. 3d 881, 887–88 (7th Cir. 2001) (*citing Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Here, the ALJ erred by offering no analysis of how the medical evidence

that could "reasonably support a claimant's complaint of pain," such as MRI evidence of disc protrusion and stenosis of the cervical and lumbar spine (R. at 800, 802), either contradicts or undermines Plaintiff's allegations of pain, *see Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("Ignored was the requirement [ALJs] carefully evaluate all evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it.") (citing 20 C.F.R. § 404.1529, SSR 96-7p). The ALJ also did not offer any "explanation of which of [claimant's] statements are not entirely credible or how credible or noncredible any of them are." *Martinez*, 630 F.3d at 697. The ALJ must provide sufficient details as to allow the Court to trace the path of the ALJ's reasoning. *See Steele*, 290 F.3d at 942; *Scott*, 297 F.3d at 595. The ALJ did not do so here.

The ALJ did point to Plaintiff's "conservative treatment" as a reason for discounting Plaintiff's symptom statements, stating,

> At this time, [Plaintiff's] only treatment for his concerns regarding both neck and back pain includes injections and medication (although he reported that he no longer takes Norco). He does not require the use of an assistive device and he is not ready to consider surgery yet.

(R. at 109) (citations omitted). While the regulations instruct ALJ's to take into account the nature of treatment when assessing a claimant's subjective symptoms, *see* 20 C.F.R. § 404.1529(c); SSR 16-3p, here, the ALJ did not explain how Plaintiff's treatment with steroids injections, which provided only short term relief, and his not being ready to consider surgery undermines Plaintiff's allegations of pain.

Defendant argues that "[e]ven if not flawless, the ALJ's subjective symptom evaluation was not patently wrong." (Dkt. 16 at 10). It is true that "[n]ot all of the

16

ALJ's reasons must be valid as long as *enough* of them are," *Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (emphasis in original). However, here, the ALJ did not provide "enough" valid reasons for discounting Plaintiff's symptom statements. *See Ghiselli*, 837 F.3d at 778 ("The ALJ's unsupported judgments regarding [Plaintiff's] ability to perform the activities of daily living and [his] statement that [he] was looking for a new job are not the sort of credibility determinations entitled to deference."); *see also Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) ("Because all of the other reasons given by the ALJ were illogical or otherwise flawed, this reason cannot alone support the finding that [claimant] was incredible.").

Finally, Defendant argues: "When an ALJ relies on medical opinions that are not contradicted, this Court has affirmed such decisions even where the ALJ otherwise commits numerous errors in assessing a claimant's allegations." (Dkt. 16 at 10) (citing *Ware v. Colvin*, 2016 WL 2851562, at *4–5 (N.D. Ill. May 16, 2016)). This argument is also unavailing. In *Ware*, the court found that the ALJ "properly relied on consulting experts' uncontradicted opinions to conclude that Ware's symptoms are not as severe as she alleges." *See Ware*, 2016 WL 2851562, at *5. Here, unlike in *Ware*, the ALJ neither discussed any medical opinion evidence when analyzing Plaintiff's symptom statements, nor explained how the doctors evaluated Plaintiff's pain allegations. The Court must limit its analysis to what the ALJ said in her opinion. *Scott v. Astrue*, 647 F.3d 734, 739 ("We confine our review to the rationale offered by the ALJ"). *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("But these

17

are not reasons that appear in the ALJ's opinion, and thus they cannot be used here"); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

Under these circumstances, the ALJ's analysis of Plaintiff's subjective symptoms requires remand. The Court is not concluding that the ALJ's evaluation of Plaintiff's subjective symptoms is incorrect, but that greater elaboration is necessary. On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski*, 245 F.3d at 888.

## B. The ALJ's RFC Assessment

Next, the Court turns to Plaintiff's argument that the ALJ's RFC determination was flawed. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those

18

that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; see 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

### 1. *Sit-stand option*

First, Plaintiff argues that the ALJ erred by failing to explain how the evidence supported the specific parameters of the sit-stand option she included in her RFC assessment, namely that Plaintiff needs the option of alternating positions every 30 minutes for 1–2 minutes at a time. (Dkt. 13 at 6). The Court agrees. An ALJ is required to build "an accurate and logical bridge from the evidence to his conclusion." *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 569 (7th Cir.2003). Pursuant to SSR 96-8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7. Likewise, "[a]n ALJ must not substitute [her] own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford,* 227 F.3d at 870; *Scott,* 647 F.3d at 740 ("ALJ did not identify any medical evidence to substantiate her belief that [claimant] is capable of meeting those physical requirements."); *Blakes,* 331 F.3d at 570 (finding an ALJ improperly "play[s] doctor" when she makes a medical conclusion without expert evidence).

Here, contrary to the requirements of SSR 96-8p, the ALJ did not explain what support she relied on or how she arrived at the calculations for the sit-stand option she added to the RFC. *See Briscoe,* 425 F.3d at 352 ("[c]ontrary to SSR 96-8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."). Specifically, there is no narrative discussion of what medical evidence led the ALJ to conclude that a break from sitting would be necessary after 30 minutes (as opposed to earlier or later), or why a 1–2 minute break (rather than a longer one) would be adequate. Further, the ALJ did not identify any medical evidence to substantiate her belief regarding Plaintiff's sitting capabilities, and Defendant does not point to any specific evidence that would support such a conclusion either. Defendant simply states that "[t]he ALJ's determination that Plaintiff would need to change positions every thirty minutes for one-two minutes, is entirely consistent with Drs. Karahalios's and Villoch's opinions that Plaintiff could not engage in "prolonged" sitting, standing or walking." (Dkt. 16 at 7) (citations omitted). But the Court cannot know if the sit/stand option formulated by the ALJ is consistent with the treating physicians' limitation of "no prolonged" sitting, standing or walking because the doctors never specified how they defined "prolonged," nor did the ALJ seek clarification from the treating physicians or a medical expert.

Similarly, the ALJ did not discuss any testimonial evidence to explain the parameters of the sit-stand option. Plaintiff argues that the ALJ did not properly address his subjective symptom statements including stating in an Adult Function

Report that "his legs became numb after sitting for ten to 20 minutes at one time" and testifying that "he began suffering pain after sitting for 15 to 20 minutes at one time." (Dkt. 13 at 9) (citing R. at 170, 441). The Court does not know if the ALJ considered these symptom statements when concluding that Plaintiff could sit for 30 minutes at a time before needing a break for 1–2 minutes. And, as previously discussed, the ALJ did not give adequate reasons for discounting Plaintiff's allegations when assessing his subjective symptoms. *See Thomas*, 745 F.3d at 806 (ALJ erred by discounting claimant's allegations of pain because his reasons for doing so were flawed). The ALJ's silence as to what medical or testimonial evidence she relied upon to formulate the sit-stand option leaves this Court unable to "trace the path of [her] reasoning." *See Scott*, 297 F.3d at 595. As Plaintiff correctly explains, "[t]he ALJ's error was not harmless, for the VE testified that if a claimant needed to alternate positions with a frequency that rendered him off-task more than 15 percent of the workday, he would be precluded from performing jobs that were performed at the sedentary exertional level." (Dkt. 13 at 9) (citing R. at 177).

Defendant cites two cases, *Ware*, 2016 WL 2851562, at *6; *Slayton v. Colvin*, 629 Fed. App'x 764, 771 (7th Cir. 2015), for the proposition that "[t]he fact that the ALJ's RFC determination was more generous to Plaintiff than his own treating physicians deemed necessary is not grounds for reversal." (Dkt. 16 at 8–9). These two cases are inapposite. Here, the issue is not that the ALJ's determination was more generous than that of his treating physicians, but rather that the ALJ did not meet the "logical bridge" requirement for the specific sit-stand option that she pro-

posed. As previously indicated, the Court has no way of knowing whether the ALJ's sit-stand option is more or less generous than the treating physicians' limitation of "no prolonged" sitting, standing or walking. Without any explanation, the Court is left to wonder how the ALJ arrived at these parameters.

Accordingly, the Court finds the ALJ's opinion does not "enable [the court] to trace the path of [her] reasoning," and thus fails to provide a "logical bridge" between the evidence and the RFC conclusion, requiring remand. *See Scott*, 297 F.3d at 595; *Scott*, 647 F.3d at 740 (finding no logical bridge where ALJ did not "explain how she reached her conclusions about [claimant]'s physical abilities"); *Terry v. Astrue,* 580 F.3d 471, 476–77 (7th Cir. 2009) (remanding where ALJ's RFC determination was not supported by substantial evidence); *Briscoe,* 425 F.3d at 352.

### 2. *Handle and finger bilaterally*

Similarly, the ALJ failed to adequately support her conclusion that Plaintiff could frequently, as opposed to occasionally or less-than-occasionally, handle and finger bilaterally. The ALJ explains:

> [T]he undersigned has added the limitation of frequent handling and fingering bilaterally to account for the claimant's assertions of intermittent numbness. These additional limitations also take into account the radiologic findings of mild lumbar stenosis and moderate cervical spine stenosis.

(R. at 110). This explanation falls short. First, it is unclear how the ALJ's limitation of frequent handling and fingering "take[s] into account the radiologic findings of mild lumbar stenosis and moderate cervical spine stenosis." No physician offered an opinion as to bilateral handling and fingering, nor did the ALJ ask a medical expert

22

about Plaintiff's capabilities in this area. Indeed, "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon*, 763 F.3d at 722; *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).

Second, while the ALJ's limitation of frequent handling and fingering ostensibly credits Plaintiff's testimony about intermittent numbness, the ALJ simultaneously stated that she found Plaintiff's symptoms statements "not entirely credible." (R. at 107). If the ALJ did credit Plaintiff's assertions about intermittent numbness, it is unclear why the ALJ limited Plaintiff to frequent as opposed to occasional handling and fingering bilaterally. Plaintiff's testimony did not indicate how this numbness affected his handling and fingering, nor did the ALJ inquire about this. The ALJ's error is not harmless as the VE testified that if Plaintiff were limited to only occasional handling and fingering, he would be precluded from performing all sedentary work. (*Id.* at 178).

Defendant's only argument is that:

> Once again, Plaintiff faults the ALJ for being more generous to him than his own treating specialists, who did not indicate that he had any manipulative limitations in their many opinions through his date last insured. . . . The fact that the ALJ's RFC determination was more generous to Plaintiff than his own treating physician's deemed necessary is not grounds for reversal.

(Dkt. 16 at 8–9). As before, the issue is that the ALJ provided no logical bridge for the Court to trace the path of her reasoning. Since no treating or agency doctor opined about manipulative limitations, it is unclear how the ALJ determined the frequency of the handling and fingering limitation, which figures significantly in a

23

claimant's ability to perform sedentary work. The ALJ's pointing to Plaintiff's assertions of "intermittent numbness" and "radiologic findings of mild lumbar stenosis and moderate cervical spine stenosis" also does not shed light on how she concluded that Plaintiff could frequently as opposed to occasionally handle and finger. *Stage*, 812 F.3d at 1125; *Moon*, 763 F.3d at 722 ("ALJ's are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."*); see also Purvis v. Berryhill*, 2017 WL 1022014, at *13 (N.D. Ill. March 16, 2017) (remanding because "the ALJ imposed an additional restriction on the Plaintiff but offered no explanation as to how he decided between an occasional or frequent stooping limitation."). As such, the case is remanded for further consideration of the RFC.

## C. Other Issues

Because the Court is remanding to reevaluate Plaintiff's subjective symptom statements and to provide a rationale for the specific parameters of the sit-stand option and handling and fingering frequency in the RFC, the Court chooses not to address Plaintiff's remaining arguments that the ALJ failed to properly consider Plaintiff's obesity or his need to nap. On remand, the ALJ shall reassess Plaintiff's subjective symptom statements with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request to reverse [13] is granted. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: July 24, 2017

_____
MARY M. ROWLAND
United States Magistrate Judge

25